UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WAYNE RICHARDSON,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SANDRA CARTER, *et al*,<br><br>　　　　　　Defendants. | Case No.  C06-5324FDB-KLS<br><br>ORDER TO SHOW CAUSE<br>REGARDING DEFENDANTS'<br>MOTION TO DISMISS |

This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1),  Local Magistrates Rules MJR 3 and 4, and Rule 72 of the Federal Rules of Civil Procedure. The matter is before the Court on defendants' motion to dismiss (Dkt. #30) the amended civil rights complaint plaintiff filed pursuant to 42 U.S.C. § 1983 (Dkt. #11).  After reviewing defendants' motion, plaintiff's complaint and the balance of the record, the Court finds and orders as follows:

Defendants filed their motion on December 26, 2006.  On January 16, 2007, plaintiff filed a motion for extension of time to respond to defendants' motion (Dkt. #31), which the Court granted, giving plaintiff until April 19, 2007, to do so (Dkt. #33).  To date, however, plaintiff has not filed any response, nor has he filed a second motion for extension of time or other explanation for not responding as directed by the Court.  Nevertheless, the Court finds defendants' motion ripe for consideration.

A complaint is frivolous when it has no arguable basis in law or fact. <u>Franklin v. Murphy</u>, 745 F.2d 1221, 1228 (9th Cir. 1984).  Before the Court "may dismiss a *pro se* complaint for failure to state a claim, however,  it "must provide the *pro se* litigant with notice of the deficiencies of his or her complaint and an

opportunity to amend the complaint prior to dismissal." McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992); see also Noll v. Carlson, 809 F.2d 1446, 1449 (9th Cir. 1987) (district court erred by not notifying *pro se* prisoner litigant of amended complaint's deficiencies and allowing him leave to amend). Thus, while the Court does find defendants' motion to have merit due to the deficiencies in plaintiff's amended complaint discussed herein, plaintiff shall be granted the opportunity to cure those deficiencies by filing a second amended complaint by the date set forth below.

I.   Standard of Review for Motions to Dismiss

The Court's review of a motion to dismiss brought under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) is limited to the complaint. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). All material factual allegations contained in the complaint "are taken as admitted" and the complaint is to be liberally "construed in the light most favorable" to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Lee, 250 F.3d at 688. A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. Jones v. Community Development Agency, 733 F.2d 646, 649 (9th Cir. 1984); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). Thus, even though the Court is to construe the complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." Pena, 976 F.2d at 471. Here, plaintiff has not alleged any claim or cause of action upon which the relief he is requesting can be granted.

II.   Standard of Review for Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

1    Plaintiff also must allege facts showing how individually named defendants caused or personally
2    participated in causing the harm alleged in the complaint. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir.
3    1981). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory
4    responsibility or position. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58
5    (1978). A theory of *respondeat superior* is not sufficient to state a section 1983 claim. Padway v.
6    Palches, 665 F.2d 965, 968 (9th Cir. 1982).
7    III.    Plaintiff's Due Process Claims
8    Plaintiff alleges his due process rights were violated by the actions of defendants Darren Heaward
9    and Kevin Bowen in causing his custody classification status to be demoted after he was found not guilty
10   of having committed a disciplinary infraction. Complaint, pp. 4-6. Plaintiff also alleges defendant Kerri
11   Mctarsney violated his due process rights by failing to do anything to fix his custody demotion or report
12   defendants Heaward and Bowen to their supervisors. Further, plaintiff alleges defendants Harold Clarke
13   and Sandra Carter violated his due process rights due to their gross negligence in supervising the people
14   under them. Plaintiff, however, has failed to set forth facts showing how defendants Clarke and Carter
15   caused or personally participated in causing the alleged due process violations. His claims against those
16   two defendants thus fail. With respect to the other three named defendants, it is not entirely clear whether
17   plaintiff is alleging a violation of his procedural or substantive due process rights, but in either case his
18   claims against them fail as well.
19   The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides
20   that "no state shall 'deprive any person of life, liberty, or property without due process of law.'" Toussaint
21   v. McCarthy, 801 F.3d 1080, 1089 (9th Cir. 1986). A section 1983 claim based on procedural due process
22   has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the
23   interest by the government; (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th
24   Cir. 1993). Substantive due process protects individuals from arbitrary and unreasonable government
25   action which deprives any person of life, liberty, or property. Kawaoka v. City of Arroyo Grande, 17 F.3d
26   1227, 1234 (9th Cir. 1994).
27   To establish a substantive due process violation, the government's action must have been "clearly
28   arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general
     welfare." Sinaloa Lake Owners, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting Village of Euclid v. Ambler

ORDER
Page - 3

Realty Co., 272 U.S. 365, 395 (1926)); Bateson v. Geisse, 857 F.2d 1300, 1303 (9th Cir.1988). In the prison context, an inmate has "a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

A prisoner, however, has "no constitutional right to a particular classification status." Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also Moody v. Daggett, 429 U.S. 78, 88 n. 9 (rejecting claim that prisoner classification in federal system invoked due process protections); Smith v. Noonan, 992 F.2d 987, 989 (9th Cir. 1993) (no liberty interest under Washington or federal constitutions to be free from administrative segregation). Plaintiff's procedural due process claims against defendants Heaward, Bowen and Mctarsney thus fail, as he has no liberty interest in a particular classification and has not claimed a property interest is implicated by their actions. Accordingly, he also cannot show that his custody classification demotion imposed an "atypical and significant hardship" on him "in relation to the ordinary incidents of prison life."[1] Sandin, 515 U.S. at 484.

IV. Plaintiff's Claims of Cruel and Unusual Punishment

The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (citations omitted). To state a claim under the Eighth Amendment, plaintiff must satisfy two requirements. First, the deprivation being alleged "must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted). That is, the prison official's "act or omission must result in the denial of 'the minimum civilized measure of life's necessities.'" Id. For claims based on failure to prevent harm, the inmate also must show he was "incarcerated under conditions posing a substantial risk of serious harm." Id.

In addition to this "objective component," there is a subjective one. Keenan v. Hall, 83 F.3d 1083,

---

[1] Plaintiff's classification also is not an atypical hardship, because a prisoner has "no liberty interest in freedom from state action taken within the sentence imposed," which includes being placed in administrative segregation. May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (quoting Sandin, 515 U.S. at 480 (discussing prior decisions holding that inmates have no due process right to avoid administrative segregation and remain in prison general population, and that transfer to less amenable quarters for non-punitive reasons constitutes action ordinarily contemplated by prison sentence). Although plaintiff has not claimed he was placed in administrative segregation per se, clearly, if being administratively segregated falls "within the sentence imposed," then so too would demotion to a less restrictive custody classification status.

ORDER
Page - 4

1089 (9th Cir. 1996).  The prison official thus also "must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (citation omitted); Helling v. McKinney, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind.").  This state of mind "is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834.  In other words, liability under the Eighth Amendment "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (citation omitted).   An official thus will not be liable:

> [U]nless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.

Id. at 837; see also Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  A prison "official's failure to alleviate a significant risk that he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." Id. at 838.

Plaintiff alleges the actions of defendants Heaward, Bowen, Mctarsney, Clarke and Carter noted above violated his Eighth Amendment right to be free from cruel and unusual punishment.  However, he has not shown that any of these defendants' actions concerning his custody classification involved the infliction of pain, unnecessary, wanton or otherwise.  Certainly, he has not shown that such placement created an excessive risk to his health or safety.  Further, as explained above, plaintiff has not set forth any facts showing that defendants Clarke and Carter caused or personally participated in causing the alleged cruel and unusual punishment, other than in their supervisory capacities.

Plaintiff does allege that defendant Tracy Schneider imposed cruel and unusual punishment on him by not allowing him to relieve himself of bodily waste fluids and then giving him an infraction for doing so. Plaintiff's own statement of facts, however, indicates that he did not stop urinating, despite defendant Schneider's repeated directives to desist. Complaint, p. 4.  Even if defendant Schneider had prevented him from urinating, or continuing to urinate, though, preventing an inmate from relieving himself one time or temporarily only, hardly rises to the level of serious harm,[2] although it certainly cannot be contested that the ability to relieve oneself is one of life's necessities.  Indeed, plaintiff has set forth no facts showing he

---

[2] It is unclear whether plaintiff is claiming that he was relieving himself in a "dry cell," i.e., a cell that contains no toilet facilities, at the time of the alleged incident, or whether he was relieving himself in a prison "restroom" when he was told to desist by defendant Schneider and to return to his cell. Complaint, p. 4.  Regardless, plaintiff has not alleged he was prevented from doing so on more than this one occasion or that he was prevented from relieving himself for any significant length of time.

ORDER
Page - 5

1 actually was harmed by defendant Schneider's actions.

2 Plaintiff further alleges defendant Lisa Ross violated his right to be free from cruel and unusual
3 punishment by refusing to allow him to wash on one occasion. Again, while the ability to wash oneself
4 also may be a one of life's necessities, being unable to do so for one day only hardly constitutes the type of
5 serious harm contemplated by the Eighth Amendment. Once more, plaintiff has not alleged any harm as
6 the result of this incident. Plaintiff alleges defendant Ross also put him in a situation where he had to
7 choose between being placed in the Intensive Management Unit ("IMU") based on a claim that he had
8 intimidated and threatened her, or being moved into a cell with an offender he advised defendant Ross he
9 did not get along. However, although he claims he was put "in harms way" by defendant Ross' actions,
10 plaintiff himself admits he chose to go the IMU rather than get into a fight, and thus here too has failed to
11 establish his actual health or safety was adversely impacted. Complaint, p. 4.

12 V.   Plaintiff's Double Jeopardy Claims

13 Plaintiff claims that by demoting him from medium custody to close custody after he was found not
14 guilty of committing a disciplinary infraction, defendants Heaward and Bowen subjected him to being
15 placed in jeopardy twice for the same offense. The Fifth Amendment to the United States Constitution
16 provides in relevant part that no person shall "be subject for the same offense to be twice put in jeopardy of
17 life or limb," which applies to the states via the Fourteenth Amendment. Garrity v. Fiedler, 41 F.3d 1150,
18 1152 n.4 (7th Cir. 1994) (quoting U.S. Const. Amend V). The Fifth Amendment's Double Jeopardy Clause
19 "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second
20 prosecution for the same offense after conviction; and multiple punishments for the same offense." United
21 States v. Halper, 490 U.S. 435, 440 (1989).

22 Plaintiff's argument for the application of the Double Jeopardy Clause here appears to be that he
23 was found "not guilty" in a prison disciplinary hearing and than "punished" again for the same infraction by
24 the classification demotion caused by defendants Heaward and Bowen. Violations of prison rules that
25 result in administrative disciplinary actions, however, "do not place an offender in jeopardy for purposes of
26 the double jeopardy clause." Kerns v. Parratt, 672 F.2d 690, 691 (8th Cir. 1982). This is true even in those
27 cases where the latter proceeding is a criminal prosecution in a court of law. See United States v. Rising,
28 867 F.2d 1255, 1259 (10th Cir. 1989) ("It is well established . . . that administrative punishment imposed by
prison officials does not render a subsequent judicial proceeding, criminal in nature, violative of the double

1  jeopardy clause."); Garrity, 41 F.3d at 1152 (prison discipline does not preclude subsequent criminal
2  prosecution or punishment for same acts).

3     One important basis for these holdings is that prison disciplinary actions, such as the withholding of
4  good time credit and transfer resulting in a change in the place of confinement, have been found to "not
5  constitute punishment for double jeopardy purposes." United States v. Brown, 59 F.3d 102, 105 (9th Cir.
6  1995). Rather, these actions "are readily explained solely in remedial terms," in that they serve the "goals
7  of maintaining institutional order and encouraging compliance with prison rules in a situation 'where good
8  order and discipline are paramount because of the concentration of convicted criminals.'" Id. at 105
9  (citation omitted); see also United States v. Hernandez-Fundora, 49 F.3d 848, 852 (2nd Cir. 1995) ("[T]he
10 fact that remedial concerns require 'punishing' individuals for violent or disruptive conduct does not mean
11 that the sanctions imposed constitute punishment for double jeopardy purposes.").

12     Demotion in classification status similarly would appear to be readily explained solely in remedial
13 terms, even though plaintiff may view it as "punishing" him. Indeed, plaintiff has made no showing that
14 like a criminal prosecution, his classification demotion was "designed to punish" him "for a violation of the
15 criminal laws," instead of merely constituting prison disciplinary action. Garrity, 41 F.3d at 1153. Nor are
16 the "disciplinary sanctions" of which plaintiff complains "so grossly disproportionate to the remedial goal
17 of maintaining order and discipline in the prison as to constitute a punishment within the meaning of the
18 Double Jeopardy Clause." Hernandez-Fundora, 49 F.3d at 852. Indeed, cases in which the "remedial
19 sanction was so harsh as to constitute punishment" for double jeopardy purposes are "rare," and plaintiff
20 has not shown this to be one of them. Brown, 59 F.3d at 105.

21 VI.   Plaintiff's Claims of Discrimination

22     The Equal Protection Clause requires that all persons similarly situated be treated similarly by the
23 government. Inmates are protected under the Equal Protection Clause against invidious discrimination.
24 Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S. 333, 334 (1968). To set
25 forth a *prima facie* violation of the Equal Protection Clause a plaintiff first must prove a discriminatory
26 intent or purpose. Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265
27 (1977); Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991). Conclusory allegations by
28 themselves do not establish an equal protection violation without further proof of invidious discriminatory
   intent. See Village of Arlington Heights, 429 U.S. at 265.

1  Plaintiff must "show that he was treated differently from other inmates because he belonged to a
2  protected class." Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995); see also Barren v. Harrington, 152
3  F.3d 1193, 1195 (9th Cir. 1998) (to state claim under section 1983, plaintiff must show intent or purpose to
4  discriminate against him based upon membership in protected class).  The fact that plaintiff is a prisoner,
5  however, does not itself qualify him as a member of a protected class for Equal Protection Clause
6  purposes. See Wolff, 418 U.S. at 556 (prisoners protected from invidious discrimination based on race);
7  Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997) (inmates protected from intentional discrimination
8  based on religion).

9  Prisoners also "do not constitute a suspect class." Pryor v. Brennan, 914 F.2d 921, 923 (7th Cir.
10 1990); Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989); Thornton v. Hunt, 852 F.2d 526, 527 (11th Cir.
11 1988).  That is, "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis
12 of classification." Moss, 886 F.2d at 690 (internal citations omitted).  Further, when a suspect class is not
13 implicated, the Court must determine whether the alleged discrimination is "patently arbitrary and bears no
14 rational relationship to a legitimate governmental interest." Vermouth v. Corrothers, 827 F.2d 599, 602
15 (9th Cir. 1987) (citation omitted).

16 Here, plaintiff alleges that the actions, or lack thereof, taken by defendants Heaward, Bowen and
17 Mctarsney in demoting him from medium custody to close custody constituted discrimination.  However,
18 plaintiff has not specifically alleged, let alone shown, that any of these defendants discriminated against him
19 based on his race or religion. Village of Arlington Heights, 429 U.S. at 265; Vermouth, 827 F.2d at 602.
20 Nor has he shown a discriminatory intent or purpose on their part.  For the same reasons, plaintiff's
21 allegation that the actions of defendant Schneider constituted discrimination fail as well.  With respect to
22 plaintiff's claim that defendants Clarke and Carter also discriminated against him based on their failure to
23 properly manage and supervise those who worked under them, once more no showing has been made that
24 either defendant caused or personally participated in causing the harm alleged.

25 Plaintiff does allege defendant Ross discriminated against him based on his race on two separate
26 occasions.  The first occurred when defendant Ross allegedly refused to allow plaintiff to wash, but then
27 allowed another white inmate to do so "in his slot." Complaint, p. 4.  The second incident occurred when
28 defendant Ross allegedly told plaintiff she needed his cell for two other white inmates so that they could
   stay together and avoid problems with other inmates, while at the same time making him choose between

ORDER
Page - 8

being in the same cell with an inmate with whom he did not get along or being sent to the IMU. In neither of these instances, however, has plaintiff shown the requisite intent to discriminate against him on the part of defendant Ross based on his race. That is, the mere fact that the other inmates were white and plaintiff is black, does not show defendant Ross acted as she allegedly did because of that fact.

Accordingly, for the reasons set forth above, plaintiff has failed to state a proper claim against any of the defendants named in the complaint pursuant to 42 U.S.C. § 1983. As noted above, however, before recommending that defendants' motion to dismiss be granted, the undersigned shall provide plaintiff with the opportunity to file a second amended complaint, curing, if possible, the above noted deficiencies by **no later than June 14, 2007**. In attempting to so cure these deficiencies, plaintiff shall limit the second amended complaint to those claims and defendants already contained and named in the first amended complaint, and shall not seek to add any new defendants or claims. Any such new claims or newly named defendants will not be considered and shall be dismissed outright.

The second amended complaint must carry the same case number as this one. If a second amended complaint is not timely filed or if the deficiencies noted above are not properly cured, the undersigned will recommend the Court grant defendants' motion and dismiss this action as frivolous pursuant to 28 U.S.C. § 1915. Such dismissal will count as a "strike" under 28 U.S.C. § 1915(g). Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original pleading. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended), *cert. denied*, 506 U.S. 915 (1992). Thus, if plaintiff chooses to file a second amended complaint, the Court will not consider his first amended complaint.

The Clerk is directed to send plaintiff the appropriate forms so that he may file a second amended complaint. The Clerk is further directed to send a copy of this Order to plaintiff and to counsel for defendants.

DATED this 14th day of May, 2007.

Karen L. Strombom
United States Magistrate Judge