1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9
10

WAYNE RICHARDSON,

Case No.  C06-5324FDB-KLS

11

Plaintiff,

12

v.

REPORT AND
RECOMMENDATION

13

SANDRA CARTER, *et al*.,

Noted for September 28, 2007

14

Defendants.

15
16
17
18

    This matter has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§

19

636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  This matter

20

comes before the Court on plaintiff's failure to respond to the undersigned's order to show cause (Dkt.

21

#35) regarding defendants' motion to dismiss (Dkt. #30).  Having reviewed defendants' motion, the order

22

to show cause with respect thereto and the remaining record, the undersigned submits the following report

23

and recommendation for the Honorable Franklin D. Burgess' review.

24

FACTUAL AND PROCEDURAL BACKGROUND

25

    This case involves a civil rights action under 42 U.S.C. § 1983 filed by plaintiff against

26

defendants, claiming that his Fourteenth Amendment due process and equal protection rights and his

27

Eighth Amendment right against cruel and unusual punishment were violated, and that he was subject to

28

double jeopardy, when he received a demotion in custody status. (Dkt. #11).  He seeks both preliminary

REPORT AND RECOMMENDATION
Page - 1

1  and permanent injunctive relief, as well as a declaratory judgment and compensatory and punitive

2  damages. Id.

3  On December 26, 2006, plaintiff filed their motion to dismiss. (Dkt. #30).  On January 16, 2007,

4  plaintiff filed a motion for extension of time to respond to defendants' motion (Dkt. #31), which the

5  undersigned granted, giving him until April 19, 2007, to do so. (Dkt. #33).  Plaintiff, however, did not file

6  a response, nor did he file any further motions for extension of time or other explanation for not

7  responding as ordered by the undersigned.

8  Accordingly, finding defendants' motion to dismiss ripe for consideration, on May 14, 2007, the

9  undersigned issued an order to show cause, finding that plaintiff had failed to set forth a proper claim

10  against any of the named defendants. (Dkt. #35).  The undersigned informed plaintiff, however, that

11  before a recommendation of dismissal of this action would be made to the Court, he would be granted an

12  opportunity to cure, if possible, the deficiencies noted in his amended complaint, by filing by no later than

13  June 14, 2007, a second amended complaint.

14  Because the copy of the order show cause sent to plaintiff was returned for lack of proper postage,

15  on July 6, 2007, the undersigned re-sent a copy of the order to show cause to plaintiff, and gave him until

16  August 6, 2007, to respond as noted above to the findings contained therein. (Dkt. #36).  To date though,

17  plaintiff still has not responded to the order to show cause.  Accordingly, for the reasons set forth in that

18  order to show cause, and set forth again below, the undersigned recommends that the Court dismiss this

19  matter with prejudice for failure to state a proper claim.

20  DISCUSSION

21  I.      Standard of Review for Motions to Dismiss

22  The Court's review of a motion to dismiss brought under Federal Rule of Civil Procedure ("Fed.

23  R. Civ. P.") 12(b)(6) is limited to the complaint. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir.

24  2001).  All material factual allegations contained in the complaint "are taken as admitted" and the

25  complaint is to be liberally "construed in the light most favorable" to the plaintiff. Jenkins v. McKeithen,

26  395 U.S. 411, 421 (1969); Lee, 250 F.3d at 688.  A complaint should not be dismissed under Fed. R. Civ.

27  P. 12(b)(6), furthermore, "unless it appears beyond doubt that the plaintiff can prove no set of facts in

28  support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a claim under 42 U.S.C. § 1983. Jones v. Community Development Agency, 733 F.2d 646, 649 (9th Cir. 1984); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).  Thus, even though the Court is to construe the complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." Pena, 976 F.2d at 471.  Here, plaintiff has not alleged any claim or cause of action upon which the relief he is requesting can be granted.

II.    Standard of Review for Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the conduct complained of was committed by a person acting under color of state law and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff also must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint.  Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981).  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 n.58 (1978).  A theory of *respondeat superior* is not sufficient to state a section 1983 claim.  Padway v. Palches, 665 F.2d 965, 968 (9th Cir. 1982).

III.    Plaintiff's Due Process Claims

Plaintiff alleges his due process rights were violated by the actions of defendants Darren Heaward and Kevin Bowen in causing his custody classification status to be demoted after he was found not guilty of having committed a disciplinary infraction. Complaint, pp. 4-6.  Plaintiff also alleges defendant Kerri Mctarsney violated his due process rights by failing to do anything to fix his custody demotion or report defendants Heaward and Bowen to their supervisors.  Further, plaintiff alleges defendants Harold Clarke and Sandra Carter violated his due process rights due to their gross negligence in supervising the people

under them.  Plaintiff, however, has failed to set forth facts showing how defendants Clarke and Carter

caused or personally participated in causing the alleged due process violations.  His claims against those

two defendants thus fail.  With respect to the other three named defendants, it is not entirely clear whether

plaintiff is alleging a violation of his procedural or substantive due process rights, but in either case his

claims against them fail as well.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides

that "no state shall 'deprive any person of life, liberty, or property without due process of law.'"

Toussaint v. McCarthy, 801 F.3d 1080, 1089 (9th Cir. 1986).  A section 1983 claim based on procedural

due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a

deprivation of the interest by the government; (3) lack of process." Portman v. County of Santa Clara, 995

F.2d 898, 904 (9th Cir. 1993).  Substantive due process protects individuals from arbitrary and

unreasonable government action which deprives any person of life, liberty, or property.  Kawaoka v. City

of Arroyo Grande, 17 F.3d 1227, 1234 (9th Cir. 1994).

To establish a substantive due process violation, the government's action must have been "clearly

arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general

welfare."  Sinaloa Lake Owners, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting Village of Euclid v.

Ambler Realty Co., 272 U.S. 365, 395 (1926)); Bateson v. Geisse, 857 F.2d 1300, 1303  (9th Cir.1988).  In

the prison context, an inmate has "a liberty interest under the federal constitution when a change occurs in

confinement that imposes an 'atypical and significant hardship . . . in relation to the ordinary incidents of

prison life.'" Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (quoting Sandin v. Conner, 515 U.S.

472, 484 (1995); Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).

A prisoner, however, has "no constitutional right to a particular classification status." Hernandez

v. Johnston, 833 F.2d 1316, 1318 (9th Cir. 1987); see also Moody v. Daggett, 429 U.S. 78, 88 n. 9

(rejecting claim that prisoner classification in federal system invoked due process protections); Smith v.

Noonan, 992 F.2d 987, 989 (9th Cir. 1993) (no liberty interest under Washington or federal constitutions

to be free from administrative segregation).  Plaintiff's procedural due process claims against defendants

Heaward, Bowen and Mctarsney thus fail, as he has no liberty interest in a particular classification and

has not claimed a property interest is implicated by their actions.  Accordingly, he also cannot show that

1  his custody classification demotion imposed an "atypical and significant hardship" on him "in relation to

2  the ordinary incidents of prison life."[1] <u>Sandin</u>, 515 U.S. at 484.

3  IV.    Plaintiff's Claims of Cruel and Unusual Punishment

4          The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving

5  standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary

6  and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (citations omitted).  To

7  state a claim under the Eighth Amendment, plaintiff must satisfy two requirements.  First, the deprivation

8  being alleged "must be, objectively, 'sufficiently serious.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)

9  (citation omitted).  That is, the prison official's "act or omission must result in the denial of 'the minimum

10  civilized measure of life's necessities.'" <u>Id.</u>  For claims based on failure to prevent harm, the inmate also

11  must show he was "incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u>

12          In addition to this "objective component," there is a subjective one. <u>Keenan v. Hall</u>, 83 F.3d 1083,

13  1089 (9th Cir. 1996).  The prison official thus also "must have a 'sufficiently culpable state of mind.'"

14  <u>Farmer</u>, 511 U.S. at 834 (citation omitted); <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993) ("[A] claim that

15  a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials'

16  state of mind.").  This state of mind "is one of 'deliberate indifference' to inmate health or safety."

17  <u>Farmer</u>, 511 U.S. at 834.  In other words, liability under the Eighth Amendment "requires 'more than

18  ordinary lack of due care for the prisoner's interests or safety.'" <u>Id.</u> at 835 (citation omitted).   An official

19  thus will not be liable:

20          [U]nless the official knows of and disregards an excessive risk to inmate health or
        safety; the official must both be aware of facts from which the inference could be
21          drawn that a substantial risk of serious harms exists, and he must also draw the
        inference.

22
23  <u>Id.</u> at 837; <u>see also</u> <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).  A prison "official's failure to

24  alleviate a significant risk that he should have perceived but did not," therefore, cannot "be condemned as

25  ────────────────

26          [1]Plaintiff's classification also is not an atypical hardship, because a prisoner has "no liberty interest in freedom from state
action taken within the sentence imposed," which includes being placed in administrative segregation. <u>May v. Baldwin</u>, 109 F.3d

27  557, 565 (9th Cir. 1997) (quoting <u>Sandin</u>, 515 U.S. at 480 (discussing prior decisions holding that inmates have no due process right
to avoid administrative segregation and remain in prison general population, and that transfer to less amenable quarters for non-

28  punitive reasons constitutes action ordinarily contemplated by prison sentence).  Although plaintiff has not claimed he was placed
in administrative segregation per se, clearly, if being administratively segregated falls "within the sentence imposed," then so too
would demotion to a less restrictive custody classification status.

1    the infliction of punishment." Id. at 838.

2         Plaintiff alleges the actions of defendants Heaward, Bowen, Mctarsney, Clarke and Carter noted

3    above violated his Eighth Amendment right to be free from cruel and unusual punishment.  However, he

4    has not shown that any of these defendants' actions concerning his custody classification involved the

5    infliction of pain, unnecessary, wanton or otherwise.  Certainly, he has not shown that such placement

6    created an excessive risk to his health or safety.  Further, as explained above, plaintiff has not set forth

7    any facts showing that defendants Clarke and Carter caused or personally participated in causing the

8    alleged cruel and unusual punishment, other than in their supervisory capacities.

9         Plaintiff does allege that defendant Tracy Schneider imposed cruel and unusual punishment on

10   him by not allowing him to relieve himself of bodily waste fluids and then giving him an infraction for

11   doing so.  Plaintiff's own statement of facts, however, indicates that he did not stop urinating, despite

12   defendant Schneider's repeated directives to desist. Complaint, p. 4.  Even if defendant Schneider had

13   prevented him from urinating, or continuing to urinate, though, preventing an inmate from relieving

14   himself one time or temporarily only, hardly rises to the level of serious harm,[2] although it certainly

15   cannot be contested that the ability to relieve oneself is one of life's necessities.  Indeed, plaintiff has set

16   forth no facts showing he actually was harmed by defendant Schneider's actions.

17        Plaintiff further alleges defendant Lisa Ross violated his right to be free from cruel and unusual

18   punishment by refusing to allow him to wash on one occasion.  Again, while the ability to wash oneself

19   also may be a one of life's necessities, being unable to do so for one day only hardly constitutes the type

20   of serious harm contemplated by the Eighth Amendment.  Once more, plaintiff has not alleged any harm

21   as the result of this incident.  Plaintiff alleges defendant Ross also put him in a situation where he had to

22   choose between being placed in the Intensive Management Unit ("IMU") based on a claim that he had

23   intimidated and threatened her, or being moved into a cell with an offender he advised defendant Ross he

24   did not get along.  However, although he claims he was put "in harms way" by defendant Ross' actions,

25   plaintiff himself admits he chose to go the IMU rather than get into a fight, and thus here too has failed to

26

27        [2]It is unclear whether plaintiff is claiming that he was relieving himself in a "dry cell," i.e., a cell that contains no toilet

28   facilities, at the time of the alleged incident, or whether he was relieving himself in a prison "restroom" when he was told to desist
     by defendant Schneider and to return to his cell. Complaint, p. 4.  Regardless, plaintiff has not alleged he was prevented from doing
     so on more than this one occasion or that he was prevented from relieving himself for any significant length of time.

1   establish his actual health or safety was adversely impacted. Complaint, p. 4.

2   V.      Plaintiff's Double Jeopardy Claims

3           Plaintiff claims that by demoting him from medium custody to close custody after he was found

4   not guilty of committing a disciplinary infraction, defendants Heaward and Bowen subjected him to being

5   placed in jeopardy twice for the same offense.  The Fifth Amendment to the United States Constitution

6   provides in relevant part that no person shall "be subject for the same offense to be twice put in jeopardy

7   of life or limb," which applies to the states via the Fourteenth Amendment. Garrity v. Fiedler, 41 F.3d

8   1150, 1152 n.4 (7th Cir. 1994) (quoting U.S. Const. Amend V).  The Fifth Amendment's Double Jeopardy

9   Clause "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a

10  second prosecution for the same offense after conviction; and multiple punishments for the same offense."

11  United States v. Halper, 490 U.S. 435, 440 (1989).

12          Plaintiff's argument for the application of the Double Jeopardy Clause here appears to be that he

13  was found "not guilty" in a prison disciplinary hearing and than "punished" again for the same infraction

14  by the classification demotion caused by defendants Heaward and Bowen.  Violations of prison rules that

15  result in administrative disciplinary actions, however, "do not place an offender in jeopardy for purposes

16  of the double jeopardy clause." Kerns v. Parratt, 672 F.2d 690, 691 (8th Cir. 1982).  This is true even in

17  those cases where the latter proceeding is a criminal prosecution in a court of law. See United States v.

18  Rising, 867 F.2d 1255, 1259 (10th Cir. 1989) ("It is well established . . . that administrative punishment

19  imposed by prison officials does not render a subsequent judicial proceeding, criminal in nature, violative

20  of the double jeopardy clause."); Garrity, 41 F.3d at 1152 (prison discipline does not preclude subsequent

21  criminal prosecution or punishment for same acts).

22          One important basis for these holdings is that prison disciplinary actions, such as the withholding

23  of good time credit and transfer resulting in a change in the place of confinement, have been found to "not

24  constitute punishment for double jeopardy purposes." United States v. Brown, 59 F.3d 102, 105 (9th Cir.

25  1995). Rather, these actions "are readily explained solely in remedial terms," in that they serve the "goals

26  of maintaining institutional order and encouraging compliance with prison rules in a situation 'where

27  good order and discipline are paramount because of the concentration of convicted criminals.'" Id. at 105

28  (citation omitted); see also United States v. Hernandez-Fundora, 49 F.3d 848, 852 (2nd Cir. 1995) ("[T]he

REPORT AND RECOMMENDATION
Page - 7

1   fact that remedial concerns require 'punishing' individuals for violent or disruptive conduct does not

2   mean that the sanctions imposed constitute punishment for double jeopardy purposes.").

3          Demotion in classification status similarly would appear to be readily explained solely in remedial

4   terms, even though plaintiff may view it as "punishing" him.  Indeed, plaintiff has made no showing that

5   like a criminal prosecution, his classification demotion was "designed to punish" him "for a violation of

6   the criminal laws," instead of merely constituting prison disciplinary action. Garrity, 41 F.3d at 1153.

7   Nor are the "disciplinary sanctions" of which plaintiff complains "so grossly disproportionate to the

8   remedial goal of maintaining order and discipline in the prison as to constitute a punishment within the

9   meaning of the Double Jeopardy Clause." Hernandez-Fundora, 49 F.3d at 852.  Indeed, cases in which the

10  "remedial sanction was so harsh as to constitute punishment" for double jeopardy purposes are "rare," and

11  plaintiff has not shown this to be one of them. Brown, 59 F.3d at 105.

12  VI.     Plaintiff's Claims of Discrimination

13         The Equal Protection Clause requires that all persons similarly situated be treated similarly by the

14  government.  Inmates are protected under the Equal Protection Clause against invidious discrimination.

15  Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S. 333, 334 (1968).  To set

16  forth a *prima facie* violation of the Equal Protection Clause a plaintiff first must prove a discriminatory

17  intent or purpose.  Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265

18  (1977); Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991).  Conclusory allegations by

19  themselves do not establish an equal protection violation without further proof of invidious discriminatory

20  intent.  See Village of Arlington Heights, 429 U.S. at 265.

21         Plaintiff must "show that he was treated differently from other inmates because he belonged to a

22  protected class." Seltzer-Bey v. Delo, 66 F.3d 961, 964 (8th Cir. 1995); see also Barren v. Harrington, 152

23  F.3d 1193, 1195 (9th Cir. 1998) (to state claim under section 1983, plaintiff must show intent or purpose

24  to discriminate against him based upon membership in protected class).  The fact that plaintiff is a

25  prisoner, however, does not itself qualify him as a member of a protected class for Equal Protection

26  Clause purposes. See Wolff, 418 U.S. at 556 (prisoners protected from invidious discrimination based on

27  race); Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997) (inmates protected from intentional

28  discrimination based on religion).

1    Prisoners also "do not constitute a suspect class." <u>Pryor v. Brennan</u>, 914 F.2d 921, 923 (7th Cir.

2    1990); <u>Moss v. Clark</u>, 886 F.2d 686, 690 (4th Cir. 1989); <u>Thornton v. Hunt</u>, 852 F.2d 526, 527 (11th Cir.

3    1988).  That is, "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis

4    of classification." <u>Moss</u>, 886 F.2d at 690 (internal citations omitted).  Further, when a suspect class is not

5    implicated, the Court must determine whether the alleged discrimination is "patently arbitrary and bears

6    no rational relationship to a legitimate governmental interest." <u>Vermouth v. Corrothers</u>, 827 F.2d 599, 602

7    (9th Cir. 1987) (citation omitted).

8    Here, plaintiff alleges that the actions, or lack thereof, taken by defendants Heaward, Bowen and

9    Mctarsney in demoting him from medium custody to close custody constituted discrimination.  However,

10   plaintiff has not specifically alleged, let alone shown, that any of these defendants discriminated against

11   him based on his race or religion. <u>Village of Arlington Heights</u>, 429 U.S. at 265; <u>Vermouth</u>, 827 F.2d at

12   602.  Nor has he shown a discriminatory intent or purpose on their part.  For the same reasons, plaintiff's

13   allegation that the actions of defendant Schneider constituted discrimination fail as well.  With respect to

14   plaintiff's claim that defendants Clarke and Carter also discriminated against him based on their failure to

15   properly manage and supervise those who worked under them, once more no showing has been made that

16   either defendant caused or personally participated in causing the harm alleged.

17   Plaintiff does allege defendant Ross discriminated against him based on his race on two separate

18   occasions.  The first occurred when defendant Ross allegedly refused to allow plaintiff to wash, but then

19   allowed another white inmate to do so "in his slot." Complaint, p. 4.  The second incident occurred when

20   defendant Ross allegedly told plaintiff she needed his cell for two other white inmates so that they could

21   stay together and avoid problems with other inmates, while at the same time making him choose between

22   being in the same cell with an inmate with whom he did not get along or being sent to the IMU.  In

23   neither of these instances, however, has plaintiff shown the requisite intent to discriminate against him on

24   the part of defendant Ross based on his race.  That is, the mere fact that the other inmates were white and

25   plaintiff is black, does not show defendant Ross acted as she allegedly did because of that fact.

26   CONCLUSION

27   Accordingly, for the reasons set forth above, plaintiff has failed to state a proper claim against

28   any of the defendants named in the complaint pursuant to 42 U.S.C. § 1983.  Before the Court "may

1    dismiss a *pro se* complaint for failure to state a claim, however,  it "must provide the *pro se* litigant with

2    notice of the deficiencies of his or her complaint and an opportunity to amend the complaint prior to

3    dismissal." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1055 (9th Cir. 1992); <u>see also</u> <u>Noll v. Carlson</u>, 809 F.2d

4    1446, 1449 (9th Cir. 1987).  As explained above, plaintiff was given such notice and opportunity, but

5    failed to take advantage of that opportunity.  The undersigned therefore recommends the Court GRANT

6    defendants' motion to dismiss. (Dkt. #30).

7          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedures, the

8    parties shall have ten (10) days from service of this Report and Recommendation to file written

9    objections thereto. <u>See also</u> Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those

10   objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit

11   imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 28,**

12   **2007**, as noted in the caption.

13         DATED this 30th day of August, 2007.

14

15

16                                      Karen L. Strombom

17                                      United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION
Page - 10